**In re JENSEN.**

**PEOPLES FINANCE CO. v. JENSEN.**

No. 10554.

United States Court of Appeals
Seventh Circuit.

Nov. 4, 1952.

Rehearing Denied Dec. 24, 1952.

Lindley, Circuit Judge, dissented in part.

P. M. Knight, Chicago, Ill., for appellant.

Harold P. Block, Chicago, Ill., for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

Debtor is a yardmaster employed by Elgin, Joliet and Eastern Railway, and has been in the employ of that company for more than 20 years. On October 30, 1950, debtor filed a petition and a plan for extention under Chapter XIII (Wage Earners' Plans), Bankruptcy Act, 11 U.S.C.A. § 1001 et seq. The district court made an order of general reference on January 4, 1951. A meeting of creditors was thereafter held and several times adjourned.

By the minute order of March 13, 1951, the referee held the debtor ineligible for relief under Chapter XIII because debtor's income was in excess of the $3,600 limitation provided in that chapter on the date of the filing of the petition. The debtor on March 13 filed a petition to amend the proceedings to Chapter XI (Arrangements), Bankruptcy Act, 11 U.S.C.A. § 701 et seq., and a notation in the docket shows that the case was transferred to Chapter XI on the court's own motion.

On April 5, 1951, a formal order was entered which (1) denied the petition under Chapter XIII, (2) gave debtor leave to amend to Chapter XI proceedings, and (3) ordered that such amendment from Chapter XIII to Chapter XI be approved. Amended pleadings were filed on April 10, 1951. Debtor paid an additional filing fee as provided for proceedings under Chapter XI. A new petition under said chapter was presented. The plan, as filed, was identical to the plan which had theretofore been proposed under Chapter XIII. Under the plan, scheduled creditors were to be paid in full out of moneys to be received by a disbursing agent. Debtor authorized his employer to deduct $35 from his wages on each payday, and to turn such funds over to a disbursing agent. The Peoples Finance Company, which has a claim of $342.-52, was the only creditor which objected to the confirmation of the plan. An order was entered in the Chapter XI proceedings, adopting as claims and consents in such proceedings the claims and consents which had theretofore been filed in the Chapter XIII proceedings. A majority, in number and amount, of the creditors of debtor accepted debtor's plan.

The referee determined that debtor, as a natural person, came within the purview of Chapter XI, and that it was permissible for him to file a plan of arrangement under that chapter for an estate out of his future earnings. The referee likewise determined that the plan of arrangement should be confirmed notwithstanding a previous discharge in bankruptcy by debtor within a six year period.[1] The referee confirmed the plan of arrangement under Chapter XI, with the provision that the order of confirmation or any amendments thereafter entered would not constitute a discharge of the scheduled liabilities of the debtor until a showing had been made to the court that all the terms of the plan of arrangement or order of confirmation had been complied with, and reserved jurisdiction in the court to modify, alter, rescind, or amend the order at any time. The Finance Company petitioned for a review of said order, and the district court affirmed. It is from this order of the district court that this appeal is taken.

Debtor's employer has continued regularly to make payments to the disbursing agent out of debtor's earnings and a sizeable fund has been established; however, no payments have been made to debtor's creditors due to the pending appeal. Although the prospects of payment in full of the Finance Company's claim as well as all other claims appear to be excellent, the Finance Company persists in this appeal, stating that it desires to put its claim into judgment

---

1. On April 7, 1947, debtor had been discharged in a regular bankruptcy proceeding.

in the State court, stating, "This it deems imperative because of the extra-hazardous employment of the debtor."

The Finance Company urges a reversal based on three grounds: first, that a Bankruptcy Court has no power or authority to amend a Chapter XIII Wage Earner's Plan to a Chapter XI proceeding; second, that a Bankruptcy Court has no authority to confirm a Chapter XI Arrangement, providing for an estate to be created solely out of future earnings of debtor; and third, that the previous discharge of debtor in a voluntary bankruptcy proceeding within six years of filing the petition herein is a bar to the Chapter XI proceeding.

The first sections of Chapter XI and XIII, Bankruptcy Act, respectively provide: "The provisions of this chapter shall apply exclusively to proceedings under this chapter." Text-writers have commented on these sections. 7 Remington on Bankruptcy, 5th Ed., Sec. 3054.7, states, "The provisions of Chapter XI, Sections 301 to 399 (11 U.S.C.A. Secs. 701 to 799), by the terms of the statute are limited to proceedings brought under that Chapter of the Bankruptcy Act." To the same effect: 8 Collier on Bankruptcy, 14th Ed., Sec. 1.01; 9 Collier on Bankruptcy, 14th Ed., Sec. 21.01; 7 Remington on Bankruptcy, 5th Ed., Sec. 3129.2.

■ The Finance Company urges that as the provisions of Chapter XIII apply exclusively to proceedings under that chapter, an amendment of a Chapter XIII petition and proceedings thereunder to a Chapter XI proceedings may not be permitted. We do not agree. By General Order 37, 11 U.S.C.A. following section 53, the Federal Rules of Civil Procedure, 28 U.S.C.A., are made applicable in bankruptcy so far as practicable. Under federal civil practice the right to amend is freely granted. Furthermore a bankruptcy court is a court of equity, and is guided by equitable practices and principles, except in so far as they are inconsistent with the act. Securities & Exchange Commission v. United States Realty & Improvement Co., 310 U.S. 434, 455, 60 S.Ct. 1044, 84 L.Ed. 1293. We hold that if the petition filed herein under Chapter XI could originally have been properly filed as a Chapter XI proceeding, then the fact that it was originally filed under Chapter XIII and was designated as an amended petition is of no moment. The test is: Does it disclose on its face a proper petition and plan under Chapter XI of the Bankruptcy Act?

The Finance Company insists that future earnings are not, in contemplation of the Bankruptcy Act, property, and the authorities seem to be in accord. In Local Loan Co. v. Hunt, 292 U.S. 234, 243, 54 S.Ct. 695, 698, 78 L.Ed. 1230, the court said, "The earning power of an individual is the power to create property; but it is not translated into property within the meaning of the bankruptcy act until it has brought earnings into existence." In McKeever v. Local Finance Co., 5 Cir., 80 F.2d 449, 452, it is stated, "Future earnings are not, in contemplation of the bankruptcy law, property." In Wood v. Scott, 6 Cir., 180 F.2d 252, 253, the court said, "The bonus proposal constituted an offer for assignment of future earnings. * * * Title to the bonus had not vested in the bankrupt * * *. It was no part of the bankrupt estate. An arrangement binding a debtor's future earnings is unenforceable."

■ The plan proposed was a valid Wage Earner's Plan under Chapter XIII, Bankruptcy Act. The application of future wages to a liquidation of debts is contemplated under Chapter XIII of the Bankruptcy Act, but Chapter XI does not contain a provision authorizing such relief, and we must therefore hold that such a plan may not be allowed as the basis of an Arrangement.

We are further fortified in our interpretation of the intent of Congress when we consider that Congress first placed a limitation of $3,600 and then $5,000 of annual gross earnings as the maximum which a person might earn who desired to take advantage of the benefits provided in Chapter XIII. However, the decision of the referee, affirmed by the district court, that debtor herein was entitled to liquidate his liabilities under a plan contemplated by the provisions of Chapter XIII, irrespective of the excess of his earnings over the limitation imposed by that chapter, by the mere

device of filing such a plan under Chapter XI, would entirely nullify the limitation which Congress imposed in Sec. 606(8) of the Bankruptcy Act, 11 U.S.C.A. § 1006(8).

A further reason why the debtor cannot be granted relief under Chapter XI proceedings is because he was granted a discharge in voluntary bankruptcy on April 4, 1947, which was within 6 years of the date of the confirmation of the plan under Chapter XI. 6 Amer.Juris., 1950 Ed., Par. 1313, p. 1319, states, "A prior discharge of a debtor in bankruptcy, granted within six years, is a good ground of objection to the confirmation of an arrangement." 8 Collier on Bankruptcy, 14 Ed., Sec. 9.19, states: "The confirmation of an arrangement operates as a discharge. Because of Sec. 366(4), a debtor who would be unable to obtain a discharge in an ordinary bankruptcy proceedings cannot obtain a discharge by means of the confirmation of an arrangement in a Chapter XI proceeding." The confirmation of an arrangement operates as a discharge under a Chapter XI proceeding. The provisions of Sec. 15c(5) are made applicable to chapter XI proceedings by Sec. 366(4). "In Chapter XI Congress made certain that no doubt could exist * * * whether the confirmation of an arrangement operates as a discharge. Section 371 specifically provides that confirmation shall have such effect; * * *." 8 Collier on Bankruptcy, 14th Ed., Sec. 9.32, p. 1262.

Sec. 371 of Chapter XI provides, as far as applicable: "The confirmation of an arrangement shall discharge a debtor from all his unsecured debts and liabilities provided for by the arrangement * * *." An attempt was made herein to incorporate the provisions of Sec. 660 of Chapter XIII, 11 U.S.C.A. § 1060, deferring the discharge as hereinbefore stated. However, there is no similar provision under Chapter XI and Congress apparently decided that the provisions of Chapter XIII should be available only to those earning less than a certain stated gross income. We do not think the referee had any authority in a proceeding under Chapter XI to utilize a provision of Chapter XIII to defer a discharge until the provisions of the plan had been carried out.

The order of the district court affirming the referee's order confirming the plan under Chapter XI is reversed, and the referee's order of April 5, 1951, is vacated and set aside together with proceedings taken thereunder, and the matter is remanded to the referee for further proceedings according to law.

LINDLEY, Circuit Judge (dissenting in part).

I agree with the majority except as to two particulars. In the first place I find myself unable to join in the conclusion that the order of confirmation was beyond the power of the court because the extension approved included a promise upon the part of the debtor to turn over amounts from his future wages sufficient to discharge his debts in full.

Chapter XI, the provisions of which the debtor had a right to invoke, as the majority holds and as I agree, provides in Section 306 of Article 2, 11 U.S.C.A. § 706, that an " 'arrangement' shall mean any plan of a debtor for the settlement, satisfaction, or extension of the time of payment of his unsecured debts, upon any terms"; Chapter XI, Article 8, Section 356, 11 U.S.C.A. § 756, that "An arrangement within the meaning of this chapter shall include provisions modifying or altering the rights of unsecured creditors generally or of some class of them, upon any terms or for any consideration"; and Section 357, 11 U.S.C.A. § 757, that "An arrangement within the meaning of this chapter may include * * * (3) provisions for specific undertakings of the debtor during any period of extension provided for by the arrangement, including provisions for payments on account". It seems clear to me that by these sections Congress intended that a debtor might come into court under Chapter XI and procure an extension of his debts upon any terms or consideration whatsoever accepted by the creditors and approved by the court, including his promise to pay his debts in full over an extended period.

Such cases as Local Loan Co. v. Hunt, 292 U.S. 234, 243, 54 S.Ct. 695, 78 L.Ed. 1230; McKeever v. Local Finance Co., 5 Cir., 80 F.2d 449, 452, and Wood v. Scott, 6 Cir., 180 F.2d 252, 253, I think, do not reach this point. They go merely to the proposition that the future earnings of a debtor are no part of his estate existing at the time he files his petition in bankruptcy. The date of the petition is the cleavage line between the old estate and the new; nothing coming to the debtor after that line has been passed constitutes any part of his estate which passes to his creditors. Consequently the court is never authorized to seize and take over the future earnings of a bankrupt without his consent and over his objection. This, I think, is the full import of those decisions; they do not in any wise impinge upon a debtor's right voluntarily to offer and secure approval of an arrangement whereby he promises to surrender part of his future unpledged estate in payment of his debts in full over an extended period of time. It follows, I think, that the arrangement was clearly within the provisions of Chapter XI. Zwanzig on Bankruptcy Practice and Procedure, 1948 Ed. p. 479; Kinkead v. J. Bacon & Sons, 6 Cir., 230 F. 362 at page 366; Collier on Bankruptcy, 14th Ed. 1941, Vol. 8. I find no requirement in any provision of the chapter that the debtor must have property *in esse*, before he can secure confirmation of an extension plan, whereby he promises to pay all his debts out of future earnings. Indeed, such a requirement, it seems to me, would defeat the remedial purposes contemplated by Congress.

Nor can I bring myself to assent to the proposition that a debtor is barred from procuring confirmation of an extension arrangement to pay his debts in full by the fact that he has within six years been discharged in bankruptcy. By the provision against frequently repeated bankruptcies, it was intended to prevent a debtor from time and again, after short intervals, discharging his debts by paying only a small percentage thereof; where the agreement is to pay the debts in full the reason for the rule fails. In other words, in this case the debtor seeks no discharge except such as he will achieve through payment of his debts in full. The bankruptcy court is a court of equity. It had congressional authority to receive the debtor's petition and to confirm his plan. Whether a discharge should be allowed eventually is dependent entirely upon whether he pays his debts in full. It seems to me that the District Court had the right to say that the order of confirmation should not constitute a discharge until a showing had been made to the court that the arrangement had been fully executed. And, even were this an improper provision, I do not know why this court could not correct the situation by its mere deletion.

It seems to me illogical and at odds with the remedial nature of the legislation that a debtor who proposes to pay his debts in full should be barred from doing so because he had been discharged in bankruptcy within the six years immediately preceding. In In re Thompson, D.C., 51 F.Supp. 12, 13, the court said that the "bar to a second discharge in bankruptcy within six years had a definite and desirable purpose. It was to prevent the creation of a class of habitual bankrupts, to prevent debtors from going through bankruptcy and escaping payment of their debts whenever and as frequently as they chose. * * * The reasons why a debtor should not be allowed to accomplish this result as frequently as he chooses have no application to the situation where the debtor offers to and does pay his debts in full"; and continued "It is evident that the statute intended a distinction between the terms 'composition' and 'extension'; and that the difference is between a proceeding wherein a debtor settles his indebtedness in an agreed amount less than the amount owed and a proceeding wherein he merely obtains an extension of time within which to pay in full." The court was of the opinion that the legislative history supported this reasoning and quoted from the report to the House of Representatives concerning Section 14 as follows: "The former clause (5) was changed to include compositions, and is intended to resolve the conflict between the cases. Inasmuch as the confirmation of the composition operates as a discharge, there is no reason why it should not be so treated. It may be thought that this provision should

be expanded to constitute the confirmation of an extension or plan or reorganization on objection to a subsequent discharge; but in the case of an extension it is contemplated that debts shall be paid in full".

I would affirm the order.